# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

In the Matter of the Search of:

a yellow 2004 International Bus, Vehicle Identification
Number 4DRBRABP94B965444, Georgia License Plate
number DWF354 ("SUBJECT VEHICLE 3")

Case No. 19-M-067

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:

- ■ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ■ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: Title 18, United States Code, Sections 371, 1001, 1546, 1589, and 1592

The application is based on these facts: See attached affidavit.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Brooks Abramson, DOL-OIG
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: April 17, 2019

_____
*Judge's signature*

City and State: Milwaukee, Wisconsin                    Honorable David E. Jones              , U.S. Magistrate Judge

*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, BROOKS ABRAMSON, being first duly sworn on oath, depose and state as follows:

1. I am a Special Agent with the United States ("U.S.") Department of Labor, Office of Inspector General ("DOL-OIG") and have been so employed since 2013.

2. As part of my duties as a DOL-OIG Special Agent, I investigate organized crime affecting the American workforce and crimes against DOL programs, among them fraud in the foreign guest worker visa programs. Prior to my current position, I served for approximately four years in federal law enforcement and criminal intelligence capacities for the U.S. Departments of Homeland Security ("DHS") and State ("DOS"), where I investigated, among other things, U.S. visa fraud crimes. I have received training at the U.S. Customs and Border Protection Law Enforcement Academy and the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. As a Special Agent, I have participated in the execution of multiple federal search warrants.

3. This affidavit is made in support of an application for a warrant to search the following vehicles (collectively the "**SUBJECT VEHICLES**"), all of which have been secured at the Racine Police Department since November 2016:

a. A white 1996 GMC K1500 Suburban sports utility vehicle, Vehicle Identification Number 1GKFK16R0TJ700832, Georgia License Plate number RBY7732 ("**SUBJECT VEHCILE 1**")

b. A silver 1999 Chevrolet K15 MP sports utility vehicle, Vehicle Identification Number 1GNFK16R4XJ318389, Georgia license plate number RBY7733 ("**SUBJECT VEHICLE 2**")

c. A yellow 2004 International Bus, Vehicle Identification Number 4DRBRABP94B965444, Georgia License Plate number DWF354 ("**SUBJECT VEHICLE 3**")

4. This affidavit is made in support of an application for a warrant to search **SUBJECT VEHICLES** for evidence and instrumentalities described further in Attachment B, concerning fraud offenses, in violation of Title 18, United States Code, Sections 371 (conspiracy), 1001 (false statements), 1546 (fraud and misuse of visa, permits, and other documents), 1589 (forced labor), and 1592 (document servitude).

5. The statements in this affidavit are based on my personal knowledge, on information I have received from other law enforcement personnel, and from persons with knowledge regarding relevant facts. As this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. Witness interviews and conversations referenced in this affidavit are in summary form and are not verbatim translations of these interviews.

**I. SUMMARY**

6. Since late October of 2016, the DOL-OIG and the FBI Milwaukee Human Trafficking Task Force have been investigating Garcia & Sons Harvesting,

Inc. ("G&S") and C&D Harvesting, Inc. ("C&D"), companies that purport to recruit temporary foreign agricultural workers, primarily from Mexico, for use by various farms throughout Georgia. As described in detail below, the investigation has revealed that G&S, C&D, and others have defrauded the immigration system by submitting numerous false applications for immigrant visas. In particular, G&S, C&D, and others have engaged in a scheme to submit visa applications claiming that prospective employees would come to the U.S. to work in the State of Georgia when, in fact, dozens to hundreds of these workers were sent to farms in the County of Racine in the Eastern District of Wisconsin.

7. The investigation has further revealed that through this scheme, G&S, C&D and others have engaged in the forced labor and document servitude of intended foreign-national visa beneficiaries. More specifically, witness statements and document review reflect that prior to beginning the term of any employment with G&S or C&D, these businesses required foreign national employees to hand over their foreign passports containing the U.S. visas in order to prevent workers from early departure from their labor obligations.

8. As is further described below, law enforcement believe that the **SUBJECT VEHICLES** described in this Affidavit were used to transport these workers to and from their hotel and evidence and instrumentalities of this scheme are likely to be located within the **SUBJECT VEHICLES**.

## II. FACTS SUPPORTING PROBABLE CAUSE TO SEARCH

### A. Background on G&S and C&D

9.     According to commercial and State of Georgia databases, G&S is a Georgia Domestic Corporation in good standing as of 2018. Georgia Secretary of State public records list a Saul GARCIA as CEO and CFO and Consuelo GARCIA as Secretary with a business address at 108 Tallokas Trail, Moultrie, Georgia 31788.

10.     According to commercial and State of Georgia databases, C&D is a Georgia Domestic Corporation in good standing as of 2018. Georgia Secretary of State public records list Daniel GARCIA as CEO, CFO, and Registered Agent and Consuelo GARCIA as Secretary with a business address at 108 Tallokas Trail, Moultrie, Georgia 31788.

11.     According to a National Law Enforcement Telecommunications System vehicle registration query, **SUBJECT VEHICLES** have been registered to G&S at 108 Tallokas Trail, Moultrie, Georgia 31788 since approximately July 2016.

## B. **Overview of the H-2A Temporary Agricultural Nonimmigrant Visa Program**

12.     Foreign nationals may obtain work authorization in the U.S. through a nonimmigrant visa petitioned on their behalf by a qualifying sponsoring U.S. based employer.[1]   A nonimmigrant visa allows a foreign national to enter the U.S. temporarily, to fulfill a specific purpose.[2]

13.     One way a foreign national may obtain work authorization in the U.S. is by obtaining an H-2A nonimmigrant visa through a U.S. based agricultural

---

[1] There are limited exceptions to this general procedure, not applicable here.
[2] 8 U.S.C. § 1101(a)(15)

employer.[3] The H-2A visa allows a foreign national to work in the U.S. for a maximum uninterrupted period of three years.[4]

14. To apply for the H-2A visa, the prospective U.S. based employer must submit information to the DOL, U.S. Department of Homeland Security ("DHS") / U.S. Citizenship and Immigration Services ("USCIS"), and in most cases, the U.S. Department of State ("DOS").

15. First, the prospective employer or its agent must file a DOL Form 970 Job Order ("Job Order") with the State Workforce Agency in the area of intended employment. The Job Order lists the work hours and location where the intended H-2A workers will be employed. This Job Order causes the State Workforce Agency to begin attempts to recruit U.S. workers (i.e. U.S. Citizens or Lawful Permanent Residents) for the vacant agricultural jobs reported by the employer.[5] The employer themselves must also typically attempt their own recruitment efforts by posting advertisements for U.S. workers in a newspaper in the area of intended employment.[6] These steps are performed to adequately test the local jobs market for domestic labor.

16. Once the Job Order has been placed, and recruitment efforts for U.S. workers exhausted, the employer can submit a DOL Form 9142 Application for Temporary Employment Certification ("ATEC") to the DOL either by mail or internet submissions. Whether mailed or remitted via internet, the ATEC is received at the DOL's Francis Perkins Building, 200 Constitution Avenue Northwest, Washington,

---

[3] 8 U.S.C. § 1101(a)(15)(H
[4] 8 C.F.R. § 214.2(viii)(b)
[5] 20 C.F.R. § 655.121
[6] 20 C.F.R. § 655.151

D.C. The ATEC lists, among other things, steps taken to recruit U.S. workers, proffered wages to the intending H-2A workers and specific work locations, including worksite addresses. The DOL cannot certify (i.e. approve) the ATEC until the prospective employer has demonstrated that there are not sufficient able, willing and qualified U.S. workers and that U.S. wages will not be adversely affected by the intending H-2A beneficiaries. If submitted electronically, the ATEC does not require an original signature at the time of submission. Before the certified ATEC can be forwarded onto the DHS for final approval, however, it must be signed by both the U.S. based employer and their agent/preparer (if applicable) under penalties of perjury.

17. Once the ATEC is certified, the U.S.-based employer submits a DHS Form I-129 Petition for a Nonimmigrant Worker ("petition") to USCIS for final adjudication. The Petition lists, among other things, the wage levels and specific work locations where the intending H-2A's will be placed. The petition must also be signed by both the U.S. based employer and their agent/preparer under penalties of perjury.

18. Upon receiving USCIS approval, the U.S. based employer will be notified that their intending H-2A beneficiaries can present themselves in person to the nearest U.S. Embassy or Consulate for a visa interview by DOS officials. Although the foreign national does not have to sign the ATEC or Petition under penalties of perjury, they are required to provide a fingerprint certifying their visas

are true and correct under penalties of perjury at the time of the visa interview held abroad.

19. Once approved, an H-2A visa is affixed to the foreign national's passport, which the individual can present to U.S. Customs and Border Protection officials at any U.S. port of entry to apply for admission into the U.S. as an H-2A temporary agricultural worker.

## C. **Background of the Investigation**

20. Since late October of 2016, law enforcement has been investigating the use of G&S workers by Borzynski Farms and its affiliated entities ("Borzynski" herein), who were present and working in Wisconsin illegally, i.e., in violation of their H2-A visas, within the Racine, Wisconsin area during both the summer of 2015 and the summer of 2016.

21. In or around August of 2016, the State of Wisconsin's State Workforce Agency, the Wisconsin Department of Workforce Development ("WDWD"), assisted by migrant worker advocates, visited the Riverside Inn ("Riverside"), located in Racine, Wisconsin, based on a tip that hundreds of foreign national migrant workers were staying at Riverside and working at local farms, among them Borzynski. WDWD inspectors encountered Saul GARCIA, JR. ("GARCIA, JR."), who purported to be in charge of the G&S crews. WDWD requested and GARCIA, JR. provided a list of all G&S workers by name as well as the migrant labor contracts for each worker.

22. WDWD learned, during a phone call with Consuelo GARCIA, that Saul GARCIA, SR. ("GARCIA, SR.") signed migrant labor contracts, Daniel GARCIA did paperwork for the company, and Consuelo "Connie" GARCIA was the point of contact for further inquiries. WDWD Inspectors also learned that G&S was located and did business at 108 Tallokas Trail, Moultrie, Georgia 31788. Of additional note to inspectors during these initial visits was that G&S was paying for all the rooms at the Riverside and the GARCIAs had arranged for a food truck for the workers themselves. As a result, the housing, transportation, communication, and food supplies of the G&S workers while they were in Wisconsin were all controlled by G&S, which your affiant notes from training and consultation, are indicators of labor trafficking.

23. During a follow-up encounter in September of 2016, migrant advocates attempted to make contact with the G&S workers at the Riverside to offer food assistance vouchers to the G&S workers. While attempting to speak with the G&S workers, GARCIA, JR. attempted to obstruct access to his workers by not allowing direct access or being in close proximity while advocates attempted to address the G&S workers. GARCIA, JR. appeared most intrusive when advocates asked about the G&S workers' pay to verify their eligibility for food voucher assistance. Due to these concerns, federal law enforcement was notified.

24. On or about October 24 and 25 of 2016, law enforcement began surveillance of the Riverside. Of note were four yellow school buses, including **SUBJECT VEHICLE 3**, which were used to transport dozens of migrant workers to

Borzynski sites beginning at 6:00 a.m. daily and returning to the Riverside around 6:00 p.m. These busses bore State of Georgia license plates DWF 320, DWF 354, DWF 363, and DWF 364. Law enforcement database checks reveal that the buses are registered to G&S at 108 Tallokas Trail, Moultrie, Georgia 31788. Law enforcement also observed multiple vehicles leading and following the school buses to Borzynski sites. Among these accompanying vehicles were **SUBJECT VEHICLE 1** and **SUBJECT VEHICLE 2**. Law enforcement database checks revealed that both **SUBJECT VEHICLE 1** and **SUBJECT VEHICLE 2** were registered to G&S at 108 Tallokas Trail, Moultrie, Georgia 31788.

25. On November 7, 2016, the DOL-OIG learned from WDWD investigators that a G&S H-2A employee called WDWD seeking work. The G&S worker provided the name of J.R. to WDWD investigators. The name J.R. was not on the list provided by GARCIA, JR. to WDWD (See Paragraph II(C)(2)). J.R. stated to WDWD investigators that he/she met with a WDWD investigator around August or September 2016 when they were at the Riverside. J.R. was residing with the other G&S workers at the Riverside at the time. WDWD notified law enforcement, who began vetting the list of G&S workers provided by GARCIA, JR. to WDWD. Investigators were unable to locate any consular, immigration, or work authorization for many of the reported G&S employee names.

26. Based upon your affiants prior experience in conducting investigations into the H-2A program in Wisconsin, I am aware of schemes which involve out-of-state H-2A labor contractors providing labor in Wisconsin in violation of the

geographic restrictions attested to on the ATEC and petition as described in Paragraphs I(B)(4) and II(B)(5) of this Affidavit. In order to conceal the fact that the H-2As are present in Wisconsin from outside their required geographic work location, organizations involved in such schemes often provide their contracted H-2A workers with fraudulent names, dates of birth, and Social Security numbers and compensate the H-2A workers under these fraudulent identifiers.

27. Between late evening on November 8, 2016 and early morning on November 9, 2016, three of the four G&S buses departed Racine, Wisconsin to a location unknown to law enforcement. This development, plus the fact that the harvest season was ending, led law enforcement to plan for an encounter with the last remaining G&S workers.

28. During the afternoon of November 10, 2016, FBI Milwaukee Human Trafficking Task Force and DOL-OIG, aided by local counterparts, performed a traffic stop of the last remaining G&S school bus, **SUBJECT VEHICLE 3,** in Mount Pleasant, Wisconsin after it departed a Borzynski property based on reasonable suspicion that visa fraud and labor trafficking was taking place. **SUBJECT VEHICLE 1** and **SUBJECT VEHICLE 2** were also part of this traffic stop as they were escorting **Subject VEHICLE 3.**

29. During the traffic stop, agents encountered 23 workers in the bus, which was driven by an unlicensed worker among the group. Agents learned that the only female on the bus, who identified herself as Fernanda Casillas ("Casillas"), was the

crew leader. Casillas related to a DOL-OIG special agent that every worker on the bus worked for Borzynski and was undocumented.[7]

30.     When asked to identify themselves, other passengers on the bus provided agents with what appeared to be fraudulent DHS I-551 U.S. Permanent Resident Cards ("resident card").    Despite presenting resident cards, many passengers told agents that they were present in the U.S. on H-2A agricultural workers visas.  Based on your affiant's training and experience, a resident card in and of itself confers legal authorization for an individual to be present and work in the U.S.; therefore, a resident card holder would have no need for a temporary work visa (i.e. an H-2A).

31.     Upon being fingerprinted on scene for proper identification, most of the workers' identities came back to U.S. H-2A visas issued oversees, and the identities on the H-2A visas did not match the identities on the apparently fraudulent resident cards in the workers' possession.

32.     After being properly identified, several workers provided voluntary statements to law enforcement during the evening of November 10, 2016.[8]

---

[7] The interview took place in the Spanish language with the law enforcement officers on scene being proficient in spoken and written Spanish.

[8] On-scene fingerprinting on November 10, 2016 did not reveal any criminal history for the workers interviewed, and many workers made statements against their penal and financial interests. Law enforcement has independently corroborated portions of the workers' statements. For those who remain in the U.S. through pendency of a potential criminal trial, law enforcement applied for Deferred Action and/or Continued Presence temporary immigration remedies for witness/victims. Deferred Action is a temporary immigration status that confers work authorization and is not crime-specific. Continued Presence is a temporary immigration status that confers work authorization and allows for more permanent immigration remedies (not sought directly by the U.S. government) as it is specifically designed for victims of Human Trafficking.

33. Generally, the workers related that they entered the U.S. on their H-2A visas to work in the Moultrie, Georgia area for C&D[9], a company run by GARCIA, SR. and managed by GARCIA, JR. Many of the workers possessed a white employee identification card being the letters C&D ("employee cards"). These employee cards contained the workers' true names. These employee cards were used to punch in and out while the workers were on the farms in Georgia, and it was not until it was time to come to Wisconsin that either GARCIA, SR. or GARCIA, JR. provided workers with the fraudulent resident cards which the GARCIAs indicated should be used to cash employee paychecks. Upon being given these fraudulent resident cards in preparation for coming to Wisconsin around July of 2016, many of the workers were asked to hand over their true Mexican Passports containing their H-2A visas. The interviewed G&S workers stated that they were allowed to maintain their true Mexican Passports containing their H-2A visas while they were transported from Georgia to Wisconsin; however, once they arrived in Wisconsin they were directed by the GARCIAs to turn over their true Mexican Passports containing their H-2A visas while they worked in Wisconsin. The interviewed G&S workers stated that they were instructed by the GARCIAs to use their fraudulent identification cards and false names while in Wisconsin. GARCIA, Jr. was in charge of the C&D work crew in Wisconsin, and had departed Wisconsin two days prior to return to Georgia. The

---

[9] Prior to the November 10, 2016 encounter, law enforcement was unaware of C&D's connection to the GARCIAs. On-scene consular checks revealed that C&D Harvesting had multiple H-2A petitions for 2016 and sponsored hundreds of H-2A workers for purported agricultural work in the State of Georgia. This is when it was confirmed that C&D and G&S shared the same business address, 108 Tallokas Trail, Moultrie, Georgia 31788.

interviewed G&S workers also related that they were transported to and from their hotel to Borzynski work sites by bus.

34. During the evening of November 10, 2016, and due to the referenced fraud and trafficking factors discovered during the initial interviews, law enforcement escorted the workers back to the Riverside and made arrangement for different lodging for the 23 workers.

35. During the process of moving the workers out of the Riverside, your affiant was approached by the crew leader, Fernanda Casillas (See Paragraph 2(C)(9)). Fernanda Casillas provided law enforcement with her purported resident card and accompanying Social Security card, and stated that the items were given to her by her nephew, GARCIA, JR. to cash her paychecks. Fernanda Casillas then admitted her true identify was Maria Remedios GARCIA-OLALDE ("GARCIA-OLALDE"), and she was here on an H-2A visa sponsored by C&D. GARCIA-OLALDE presented her true Mexican Passport to law enforcement, having retrieved that document from **SUBJECT VEHICLE 2.** Additionally, GARCIA-OLALDE voluntarily provided her fraudulent identity documents to law enforcement. GARCIA-OLALDE also provided law enforcement consent to search her phone, which has approximately 20 missed calls from GARCIA, SR. and GARCIA, JR. beginning shortly after the traffic stop. The initial analysis of GARCIA-OLALDE's phone revealed communication with Consuelo GARCIA regarding work hours and wages.

36. Because she initially identified herself as Fernanda Casillas to a Sturtevant, Wisconsin police officer, GARCIA-OLALDE was taken into custody on a State of Wisconsin charge of obstructing an officer (Wisconsin Statute 946.41(2)(a)).

37. On the morning of November 11, 2016, law enforcement was contacted by personal from the Riverside who reported that GARCIA-OLALDE and other were running into rooms at the Riverside used by G&S workers and were clearing out items left from the night before. Upon arriving at the Riverside, Racine Police patrol units could not locate GARCIA-OLALDE. Law enforcement learned that GARCIA-OLALDE had $5,000 in cash on her person when arrested, and was able to bail herself out of the Racine County, Wisconsin jail.

38. Based on my training and experience and through the experience of other law enforcement officers as conveyed to me, I have learned that individuals engaged in criminal offenses commonly maintain records relating to those criminal offenses in their vehicles, especially when such individuals are mobile and cannot readily access permanent offices spaces. As the **SUBJECT VEHICLES** were observed by law enforcement officers to have been used to transport individuals involved in this scheme, there is probable cause to believe that the vehicles contain evidence of the violations of conspiracy, false statements, fraud and misuse of visas, permits, and other documents, forced labor, and document servitude.

39. Based on the above information, I respectfully request that this Court issue a search warrant for the **SUBJECT VEHICLES**, more particularly described in Attachment A, authorizing seizure of the items described in Attachment B.

## ATTACHMENT A

### DESCRIPTION OF VEHICLES TO BE SEARCHED

The vehicles to be searched include the following vehicles seized on November 10, 2016 and currently in the custody of the Racine, Wisconsin Police Department (collectively "**SUBJECT VEHICLES**"):

1. A white 1996 GMC K1500 Suburban sports utility vehicle, Vehicle Identification Number 1GKFK16R0TJ700832, Georgia License Plate number RBY7732 (**"SUBJECT VEHICLE 1"**)






2. A silver 1999 Chevrolet K15 MP sports utility vehicle, Vehicle Identification Number 1GNFK16R4XJ318389, Georgia license plate number RY7733 ("**SUBJECT VEHICLE 2**")





3. A yellow 2004 International Bus, Vehicle Identification Number 4DRBRABP94B965444, Georgia License Plate number DWF354 ("**SUBJECT VEHICLE 3**")



## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED AND SEARCHED

1. All records within **SUBJECT VEHICLES** that relate to violations of Title 18, United States Code, Sections 371 (conspiracy), 1001 (false statements), 1546 (fraud and misuse of visa, permits, and other documents), 1589 (forced labor), and 1592 (document servitude), including but not limited to the following

   a. Any and all employee or personnel files for individuals employed by Garcia & Sons Harvesting, Inc., C&D Harvesting, Inc., or their subsidiaries or affiliated companies (collectively referred to as "subject entities" herein), including but not limited to: contracts, correspondence, employment applications, emergency or family contact information, wage or salary information, labor contracts, employment offers, copies of airline tickets or itineraries, copies of government identification documents, passports, copies of visas or immigration documents, related filings and related approvals, tax and Social Security forms, and memorandums or documents showing discipline, complaints, termination, promotion or performance;

   b. Any and all payroll information, including but not limited to: tax documents, timesheets, pay stubs, accounting and bookkeeping documents, paychecks;

   c. Any and all financial records relating to subject entities, and their officers and employees, including but not limited to any and all payment ledgers, payment receipts or memorandums documenting cash, wire, check, direct deposit, or any other form of payment;

1

d. Any and all copies of checks and actual wire transfer instructions, wire receipts, and/or bank account records showing the wiring or transfer of money or currency from copies of checks and/or actual wire transfer instructions, wire receipts, and/or bank account records showing the wiring or transfer of money via check or wire to or from subject entities;

e. Waste products from the manufacture of counterfeit, altered, or fabricated contracts, letters, business related forms, emails, and immigration related papers to include but not limited to scrap paper;

f. United States currency or other monetary instruments exceeding $300.00 USD;

g. Items, documents, and effects showing ownership and/or control of the vehicle to be searched, including but not limited to keys, vehicle registration information, vehicle insurance information, and vehicle title;

h. Computer equipment, electronic storage devices, and cell phones, used to create or store the items, data, or records referenced in the paragraphs of this Attachment; and;

i. Passwords, password files, test keys, encryption codes, operating manuals, and other information necessary to access the computer equipment, storage devices or data.

2. As used above, the terms "records" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored. This includes any handmade, photographic, mechanical, electrical, electronic,

2

paper, digital, and/or magnetic forms. It also includes items in the form of computer hardware, smart phones, software, documentation, passwords, e-mail, and/or data security devices.